UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
MICHAEL CHRISTNER, Individually and on :
Behalf of All Others Similarly Situated, :
                                        :
                    Plaintiff,          :
                                        :
        vs.                             :
                                        :
WELLS FARGO & COMPANY and WELLS         :
FARGO CLEARING SERVICES, LLC dba        :
WELLS FARGO ADVISORS,                   :
                                        :
                    Defendants.         :
                                        :
———————————————————— x

Civil Action No.

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

By and through his undersigned counsel, Michael Christner ("Plaintiff") brings this class action against defendants Wells Fargo & Company ("Wells Fargo") and its majority owned subsidiary, defendant Wells Fargo Clearing Services, LLC dba Wells Fargo Advisors ("WFA") (collectively, "Defendants"), upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, including, without limitation, review and analysis of: (a) documents created and distributed by Defendants; (b) public filings made by Wells Fargo with the U.S. Securities and Exchange Commission ("SEC"); (c) press releases disseminated by Defendants; and (d) news articles, websites, and other publicly available information concerning Defendants.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.      Plaintiff brings this class action to recover damages arising out of Defendants' unlawful conduct related to their Bank Deposit Sweep Program ("Sweep Program"), which transferred idle customer cash into interest-bearing "cash sweep" accounts.

2.      Under the Sweep Program, Defendants swept customers' idle cash deposits into separate accounts that are highly lucrative for Defendants and their affiliate banks but pay unreasonably low, below-market interest rates to customers.  As such, Defendants use the Sweep Program to generate massive revenue for themselves at the expense of their customers.

3.      Defendants' use of the Sweep Program to enrich themselves by paying unreasonably low interest rates breaches their fiduciary duties and contractual obligations to customers and violates several state and federal laws including the Racketeer Influenced and Corrupt Organizations Act ("RICO Statute") and the Investment Advisers Act of 1940 ("Advisers Act").

4.      Accordingly, Defendants' Sweep Program has come under federal regulatory scrutiny, forcing them to take corrective actions.  In October 2023, Defendants disclosed that their cash sweep practices were under investigation by the SEC. In July 2024, Defendants announced that they were in discussions to resolve the SEC investigation and were changing the Sweep Program to pay customers higher interest rates, resulting in an estimated loss of $350 million in Wells Fargo's annual revenue.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) and (6), because: (a) there are 100 or more class members; (b) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (c) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court also has subject matter jurisdiction under 18 U.S.C. §1964(c), 28 U.S.C. §1331, and 50 U.S.C. §80b-14 because Plaintiff brings claims arising under the RICO Statute, 18 U.S.C. §1962, and the Advisers Act, 50 U.S.C. §§80b-1-21.

6.      This Court has personal jurisdiction over Defendants because, during the relevant time period, Defendants had offices in, did sufficient business in, had sufficient contacts with, and intentionally avail themselves of the laws and markets of New York through the promotion, sale, marketing, distribution, and operation of their products and services.

7.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because, during the relevant time period, Defendants transact business and had offices in this District, and many of the acts and practices complained of herein occur in substantial part in this District.

8.      In connection with the challenged conduct, Defendants, directly or indirectly, use the means and instrumentalities of interstate commerce, including, without limitation, the United States mails and interstate telephone communications.

## PARTIES

**Plaintiff**

9.      Plaintiff Michael Christner is a citizen of Pennsylvania.  During the relevant time period, Plaintiff was a Wells Fargo Traditional IRA account holder.  As a Wells Fargo account holder, Plaintiff's uninvested cash was swept into the banks that Defendants selected in their discretion at the unreasonably low interest rates alleged herein pursuant to the Sweep Program.

**Defendants**

10.      Defendant Wells Fargo & Company is a Delaware corporation headquartered at 420 Montgomery Street, San Francisco, California 94104. Wells Fargo is a financial services company that conducts business throughout the United States, with assets totaling $1.9 trillion, loans totaling approximately $936.7 billion, and 226,000 employees. Wells Fargo states that it "provide[s] a diversified set of banking, investment and mortgage products and services, as well as consumer and commercial finance, through banking locations and offices."  Wells Fargo is the parent company and control person of Defendant WFA.

11.      Defendant Wells Fargo Clearing Services, LLC dba Wells Fargo Advisors is a Delaware limited liability company headquartered at One North Jefferson Avenue, St. Louis, Missouri 63103. WFA is a broker-dealer and a Registered Investment Advisor that offers brokerage and investment advisory services to its nationwide client base.  WFA acts as its customers' agent for the establishment, maintenance, and operation of the Sweep Program.  WFA is a majority-owned subsidiary of, and controlled by, Defendant Wells Fargo.

## SUBSTANTIVE ALLEGATIONS

**Background on Defendants' Sweep Program**

12.    Wells Fargo is one of the largest financial services firms in the country.  Wells Fargo's wholly owned subsidiaries, WFA and Wells Fargo, offer brokerage and investment advisory services to customers nationwide.

13.    Defendants provide the Sweep Program to WFA account holders.  The terms and conditions of the Sweep Program are set forth in WFA's General Account Agreement and Disclosure Document ("Account Agreement")[1] and Cash Sweep Program Disclosure Statement ("Cash Sweep Statement")[2] (collectively, "Program Documents").  The Client Agreement is governed by the laws of the State of New York and incorporates the terms of the Bank Deposit Statement.

14.    Additional terms and conditions specific to Wells Fargo's Traditional IRA accounts are set forth in the Traditional IRA Custodial Agreement and Disclosures ("IRA Agreement").[3]

15.    Under the Sweep Program, WFA automatically sweeps eligible clients' uninvested cash balances into interest bearing deposit accounts with a network of bank partners selected by Defendants ("Program Banks"), including banks affiliated with Defendants such as Wells Fargo Bank, N.A. ("Affiliated Banks") and unaffiliated with Defendants ("Unaffiliated Banks").  Funds in the deposit accounts are insured by the Federal Deposit Insurance Corporation ("FDIC").

---

[1]    Wells Fargo, *General Account Agreement and Disclosure Document* (Sept. 2024), https://www.wellsfargoadvisors.com/bw/wellstrade/forms/589852.pdf.

[2]    Wells Fargo, *Cash Sweep Program Disclosure Statement* (Sept. 2024), https://www.wellsfargoadvisors.com/bw/forms/578326.pdf.

[3]    Wells Fargo, *Traditional IRA Custodial Agreement and Disclosures* (Dec. 9, 2020), https://www.wellsfargo.com/fetch-pdf?formNumber=PCS8009&subProductCode=WTD.

16.     The Program Documents state that WFA "will act as [a customer's] agent in establishing and maintaining the Bank Deposit Sweep Programs. [The customer's] first deposit into the Standard Bank Deposit Sweep or Expanded Bank Deposit Sweep will constitute [his or her] appointment of Wells Fargo Advisors as [his or her] agent[.]"[4]

17.     The sweep interest rates paid to customers are set by Affiliated Banks "in consultation with Wells Fargo Advisors."[5]  WFA then directs Unaffiliated Banks to use the same interest rates set by the Affiliated Banks.[6]

**Defendants Reap Significant Benefits from the Sweep Program to the Detriment of Their Customers, Who Are Paid Unreasonably Low Interest Rates**

18.     The Sweep Program provides highly lucrative financial benefits to Defendants and their affiliated Wells Fargo Sweep Banks.  Defendants admit that WFA and its affiliates have a "conflict of interest" because they "benefit financially from cash balances held in the Bank Deposit Sweep Programs through the 'spread' Affiliated Banks earn on deposits, payments Wells Fargo Advisors receives from Affiliated Banks and Unaffiliated Banks, and incentive compensation" and thus are motivated to enroll customers in the Sweep Program.[7]

19.     Moreover, Defendants admit that WFA has a financial incentive adverse to customers because the Sweep Program allows it to keep greater portions of the payments from Program Banks when it pays lower interest rates to customers:

> [WFA] receives payments from both Unaffiliated and Affiliated Banks, which are calculated as a percentage of the client assets deposited in the Cash Sweep Program. The interest rates paid to client accounts in the Bank Deposit Sweep Program are

---

[4]   *Account Agreement*, *supra* n.1; *Cash Sweep Statement*, *supra* n.2.

[5]   *Id.*

[6]   *Id.*

[7]   *Id.*

deducted from these payments, and Wells Fargo Advisors retains the remainder. Accordingly, ***Wells Fargo Advisors has an incentive to pay lower interest rates to participating accounts.***[8]

20.     Due to this adverse financial incentive, Defendants fail to pay reasonable sweep interest rates for Sweep Program customers.  As defined in the Oxford English Dictionary, the term "reasonable" is synonymous with "fair" and "equitable."

21.     The U.S. Department of Labor defines a "reasonable" rate of interest as "a rate of interest determinable by reference to short-term rates available to other customers of the bank, those offered by other banks, those available from money market funds, those applicable to short-term instruments such as repurchase agreements, or by reference to a benchmark such as sovereign short term debt (e.g., in the U.S., treasury bills), all in the jurisdiction where the rate is being evaluated."[9]

22.     Similarly, the U.S. Internal Revenue Service defines an "arm's length interest rate" as "a rate of interest which was charged, or would have been charged, at the time the indebtedness arose, in independent transactions with or between unrelated parties under similar circumstances."[10]  Thus, an interest rate is reasonable if it is based on a fair market valuation.

---

[8]     *Id*.  The SEC also recognizes that "cash sweep programs" are a "common source[] of conflicts of interest."  U.S. Securities and Exchange Commission, Staff Bulletin:  Standards of Conduct for Broker-Dealers and Investment Advisers Conflicts of Interest (Sept. 9, 2024), https://www.sec.gov/tm/iabd-staff-bulletin-conflicts-interest.

[9]     68 Fed. Reg. 34646 (2003).

[10]     26 C.F.R. §1.482-2(a)(2).

23.     In contrast, Defendants' Sweep Program pays below-market interest rates ranging from 0.02% to 0.20% depending on the amount deposited by a customer.[11]  These miniscule rates are *significantly* below several objective benchmarks of reasonableness:

- **Competitors' Sweep Programs**.  Defendants' sweep interest rates are far below fair market value, as demonstrated by the rates paid by Defendants' competitors who offer FDIC-insured sweep accounts similar to those in the Sweep Program. For example, competitor Moomoo's rate is 4.35%,[12] Webull's rate is 4.00%,[13] Vanguard's rate is 3.90%,[14] Fidelity's rate is 2.32%,[15] and Robert W. Baird's rate is between 1.52% and 3.11%.[16]

- **Defendants' Other Interest-Bearing Accounts**.  Further, the sweep interest rates paid by the Sweep Program are far lower than the interest rates paid by Defendants' other products outside of the Sweep Program.  For example, Wells Fargo's FDIC-insured Retirement High Yield Savings account pays up to 2.47%, Wells Fargo's FDIC-insured Platinum Savings Account pays up to 2.48%, and money market funds offered by Wells Fargo pay up to 4.51%.[17]

---

[11]   Wells Fargo, *Wells Fargo Advisors Cash Sweep Rates & Yields*, https://www.wellsfargoadvisors.com/financial-services/account-services/cash-sweep/rates.htm (last visited Nov. 21, 2024).

[12]   Moomoo, *Boost your uninvested cash with 4.6% APY*, https://www.moomoo.com/us/invest/cashsweep (last visited Nov. 18, 2024).

[13]   Webull, *Webull High-Yield Case Management*, https://www.webull.com/cash-management (last visited Nov. 18, 2024).

[14]   Vanguard, *Your cash deserves a good home*, https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account (last visited Nov. 18, 2024).

[15]   Fidelity, *Fidelity Individual Retirement Accounts (IRA)*, https://digital.fidelity.com/prgw/digital/fdic-interest-rate/ira (last visited Nov. 18, 2024).

[16]   Baird, *Cash Sweep Program*, https://www.rwbaird.com/cashsweeps/ (last visited Nov. 18, 2024).

[17]   Wells Fargo, *Wells Fargo Destination IRA Rates: FDIC-Insured CDs and Savings Accounts*, https://www.wellsfargo.com/investing/retirement/ira/select/destination/rates/ (last visited Nov. 21, 2024); Wells Fargo, *Wells Fargo Advisors Cash Sweep Rates & Yields*, https://www.wellsfargoadvisors.com/financial-services/account-services/cash-sweep/rates.htm (last visited Nov. 21, 2024).

- **<u>Federal Funds Rate</u>**.  The sweep interest rates in the Sweep Program are also far below the U.S. Federal Reserve's benchmark federal funds rate, currently at 4.50% to 4.75%.

- **<u>Three-Month Treasury Bill Rate</u>**.  The sweep interest rates in the Sweep Program are far below the three-month U.S. treasury bill rate, currently at 4.41%.[18]

- **<u>Repurchase Rate</u>**.  The sweep interest rates in the Sweep Program are well below the overnight interest rate at which the U.S. Federal Reserve repurchases securities from private banks (*i.e.*, the repo rate), which is currently 4.55%.[19]

24.    These benchmarks individually and collectively demonstrate that the sweep interest rates in the Sweep Program are unreasonable.  As a result, Plaintiff and the Class suffer damages by receiving far lower interest payments than they would receive if the sweep interest rates were reasonable.

**WFA Breaches Its Contractual Obligations and Fiduciary Duties Related to the Sweep Program**

25.    Under the Program Documents, WFA agrees to act as its customers' agent, and, thus, is contractually obligated to act in its customers' best interests in seeking and negotiating reasonable sweep interest rates under the Sweep Program.[20]  However, as discussed above, WFA fails to act in its customers' best interests because the interest rates that WFA pays to Sweep Program participants are unreasonable compared to the interest rates paid by competitors and the federal funds rates.

---

[18]    Federal Reserve, *Economy at a Glance – Policy Rate*, https://www.federalreserve.gov/economy-at-a-glance-policy-rate.htm (last visited Nov. 18, 2024); Federal Reserve Bank of St. Louis, *3-Month Treasury Bill Secondary Market Rate, Discount Basis*, https://fred.stlouisfed.org/series/DTB3 (last visited Nov. 18, 2024).

[19]    Federal Reserve Bank of St. Louis, *Overnight Reverse Repurchase Agreements Award Rate: Treasury Securities Sold by the Federal Reserve in the Temporary Open Market Operations*, https://fred.stlouisfed.org/series/RRPONTSYAWARD (last visited Nov. 18, 2024).

[20]    *Cash Sweep Statement, supra* n.2.

26.     Moreover, Defendants violate contractual duties to provide reasonable rates of return on its customers' cash balances in the Sweep Program.  The Program Documents state that WFA "assumes no obligation to seek or negotiate interest rates *in excess of* any reasonable rate of interest the Affiliated Banks are willing to credit," thereby assuming a duty to seek and negotiate *reasonable* rates of interest. [21]

27.     The IRA Agreement provides that "[a]ssets of the IRA may be invested in deposits of Wells Fargo Bank, N.A. (or an affiliate) that bear a reasonable rate of interest."[22]

28.     The IRA Agreement also incorporates Internal Revenue Code ("IRC") provisions requiring reasonable interest rates when fiduciaries deposit funds from IRA accounts into accounts held by affiliates.  Specifically, the IRA Agreement states that a "prohibited transaction" is "any improper use of your Traditional IRA by you, your beneficiary or any disqualified person" and refers account holders to IRS Publication 590 "[t]o learn more about prohibited transactions and who are disqualified persons."[23]

29.     Summarizing IRC rules concerning IRAs, IRS Publication 590 states that "disqualified persons include your fiduciary," such as anyone who "[e]xercises any discretionary authority or discretionary control in managing your IRA or exercises any authority or control in managing or disposing of its assets," and that "prohibited transactions" are "any improper use of your traditional IRA account or annuity by you, your beneficiary, or any disqualified person."

30.     The IRC further states that a "prohibited transaction" includes the "lending of money or other extension of credit between a plan" and a "disqualified person" includes a

---

[21]   *Id.*

[22]   *IRA Agreement* §II.5(c)(iv).

[23]   *Id.* at §I.H3.

"fiduciary" and "a person providing services to the [IRA] plan."[24]  The IRC provides "exemptions" for "prohibited transactions," including "the investment of all or part of a plan's assets in deposits *which bear a reasonable interest rate* in a bank or similar financial institution."[25]

31.    Therefore, under the IRC, Defendants and the Affiliated Banks are "disqualified person[s]" and sweeping cash from IRA accounts to Affiliated Banks is a "prohibited transaction" barring an exemption.  No exemption applies because the Affiliated Banks do not pay reasonable interest rates, and thus Defendants' Sweep Program transactions violate the provisions of the IRA Agreement that incorporate the IRC.

32.    WFA's conduct related to the Sweep Program also violates its fiduciary duties.  As an investment advisor for an actively managed client account, WFA owes a fiduciary duty to its clients under the Advisers Act.[26]  In particular, WFA is obligated to "serve the best interest of its client and not subordinate its client's interest to its own" and was not permitted to "place its own interests ahead of the interests of its client."[27]  WFA owes a similar duty of care to its retail clients pursuant to Regulation Best Interest, which requires it to act in its retail customers' best interests

---

[24]   26 U.S.C. §4975(c)(1)(B), (e)(2).

[25]   26 U.S.C. §4975(d)(4).  Department of the Treasury regulations confirm that when a financial institution "invests plan assets in deposits in itself or its affiliates under an authorization contained in a plan or trust instrument," the authorization must name the institution and "state that [it] . . . may make investments in deposits which bear a reasonable rate of interest in itself (or in an affiliate)."  26 C.F.R. §54.4975-6(b)(3); *see also* 29 U.S.C. §1108(b)(1) (ERISA rule exempting interested party transactions that "bear a reasonable a reasonable rate of interest"); FINRA Rule 2122 (stating that "[c]harges, if any, for services performed . . . shall be reasonable and not unfairly discriminatory among customers").

[26]   *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 C.F.R. §276 (July 12, 2019) (interpreting Section 206 of the Advisers Act, 15 U.S.C. §80b-6).

[27]   *Id.*

and prohibits it from placing its own interests ahead of its retail customers' interests.[28]  In violation

of these duties, however, WFA uses the Sweep Program to enrich Defendants and their affiliates

at the expense of customers who pay unreasonably low interest rates.

33.    These allegations are strongly supported by the fact that the Sweep Program is

under scrutiny from the SEC, forcing Defendants to take corrective actions.  In October 2023,

Wells Fargo announced that the SEC was investigating its sweep practices.[29]   In August 2024,

Wells Fargo further announced that it was in "resolution discussions" with the SEC[30] and that

"[l]ate in second quarter 2024, we increased pricing on sweep deposits in advisory brokerage

accounts, which we expect will lower future net interest income."[31]   While Wells Fargo did not

announce the details of the rate increase, it estimated that the increase would result in a loss of

$350 million in annual revenue.[32]

**Defendants Make Material Misrepresentations and Omissions Regarding the Sweep Program**

34.    In the Program Documents, Defendants make material omissions by failing to

disclose that, as discussed above, Defendants established and use the Sweep Program to enrich

---

[28]  *See* Securities and Exchange Commission, Regulation Best Interest: The Broker-Dealer Standard of Conduct, 84 Fed. Reg. 33318, 33320, 17 C.F.R. §240.15l-1 (July 12, 2019).

[29]  Wells    Fargo    &    Company,    Form    10-Q,    at    95    (Oct.    31,    2023), https://www.wellsfargo.com/assets/pdf/about/investor-relations/sec-filings/2023/third-quarter-10q.pdf.

[30]  Wells    Fargo    &    Company,    Form    10-Q,    at    94    (Aug.    1,    2024), https://www.wellsfargo.com/assets/pdf/about/investor-relations/sec-filings/2024/second-quarter-10q.pdf.

[31]  *Id*. at 6.

[32]  AdvisorHub, *Wells Fargo to Lose $350 Million in Revenue as It Raises Rates on Client Cash* (July 12, 2024), https://www.advisorhub.com/wells-fargo-to-lose-350-million-in-revenue-as-it-raises-rates-on- client-cash/.

themselves by paying unreasonably low interest rates to customers in order to increase their financial benefits.

35.     Moreover, in the Sweep Program Documents, Defendants falsely stated that they were seeking and negotiating "reasonable" interest rates on behalf of customers when in fact they were coordinating with Program Banks to pay unreasonably low interest rates to customers in order to increase Defendants' financial benefits from the Sweep Program.[33]

36.     Similarly, in the IRA Agreement, Defendants falsely state that assets will be invested in deposits that bear a "reasonable rate of interest" and will not be used for "prohibited transactions," including deposits that do not bear a reasonable interest rate.[34]

37.     Further, Defendants misleadingly stated:

- "These rates will vary over time and *may be* lower than rates available to clients making deposits directly with the Program Banks or at other banks."[35]

- "Higher rates of interest than the rates credited by the Affiliated Banks on Expanded Bank Deposit Sweep deposits *may be* available outside of the Cash Sweep Program."[36]

- "We and the Program Banks *may* pay rates of interest on the Expanded Bank Deposit Sweep that are lower than the prevailing market interest rates."[37]

38.     The above statements were misleading because, in reality, the Sweep Program interest rates paid to WFA customers were *always* less than the customers could obtain by making

---

[33]   *Account Agreement*, *supra* n.1; *Cash Sweep Statement*, *supra* n.2.

[34]   *IRA Agreement* §I.H3, II.5(c)(iv)

[35]   *See, e.g.*, https://web.archive.org/web/20230213070438/https://www.wellsfargoadvisors.com/bw/wellstrade/forms/589852.pdf (last visited Nov. 22, 2024).

[36]   *Id.*

[37]   *Id.*

direct deposits themselves, ***always*** less than the customer could obtain by making deposits outside of the Sweep Program, and ***always*** less than the prevailing market rates (*i.e.*, these were not mere possibilities that "may" occur).

39.     The above statements were also misleading because they were made in conjunction with Defendants' representations that they were providing "reasonable" interest rates to Sweep Program customers.  These representations indicated that the Sweep Program interest rates would not be significantly less than those available elsewhere, but in reality the Sweep Program interest rates were always significantly less than those available elsewhere.

40.     Moreover, Defendants' statements about potentially ***lower*** interest rates do not excuse their contractual and fiduciary obligations to pay ***reasonable*** interest rates, as described above.

41.     In September 2023, around the time Wells Fargo announced the SEC's investigation into its sweep practices, Defendants amended some of its disclosures regarding its interest payments under the Sweep Program, including the following:

- "These rates will vary over time and are ***typically lowe***r than rates available to clients making deposits directly with the Program Banks or at other banks."[38]

- "The Program Banks pay rates of interest on the Bank Deposit Sweep Program deposits that are ***significantly less*** than the spread those banks earn on deposits."[39]

- "You may elect not to participate in the Cash Sweep Program and instead periodically invest cash balances directly in available money market mutual funds or other products offered as direct investments outside of the Cash Sweep Program. Those direct investment options would ***likely generate a higher rate of interest or yield*** than the Cash Sweep Program."[40]

---

[38]   *Account Agreement*, *supra* n.1; *Cash Sweep Statement*, *supra* n.2.

[39]   *Id.*

[40]   *Id.*

- "The interest rates paid to client accounts in the Bank Deposit Sweep Program are deducted from these payments, and Wells Fargo Advisors retains the remainder. Accordingly, Wells Fargo Advisors **has an incentive to pay lower interest rates to participating accounts**. Note that the fee Wells Fargo Advisors receives from the Program Banks **usually exceeds** the interest paid to participating client accounts by a **substantial amount**. Moreover, due to the contractual arrangements in place between the Unaffiliated Banks and Wells Fargo Advisors, the rates paid out to non-advisory accounts **will be substantially lower** than the Federal Funds Effective Rate and will not increase as quickly as the Federal Funds Effective Rate."[41]

42. Through these amended disclosures, Defendants admitted that their prior disclosures about the Sweep Program, discussed above, were false and misleading and omitted material facts about Defendants' incentive to pay, and payment of, unreasonably low interest rates to customers.

**Defendants Violate the RICO Statute**

43. Defendants violate the RICO Statute through their implementation of the Sweep Program.

44. WFA is an "enterprise" within the meaning of the RICO Statute.  Through WFA, Defendants knowingly and intentionally devised and operate the Sweep Program as a scheme to defraud customers, including Plaintiff and the Class.  Defendants use the Sweep Program to benefit and enrich themselves through, among other things, the payment of unreasonably low interest rates to customers on money deposited into the Sweep Program.

45. The Sweep Program involves commercial activities across state lines, including Defendants' distribution of the Program Documents to customers, and Defendants' receipt and transfer of money deposited by customers.

46. Through the Sweep Program, Defendants conduct and participate in a pattern of racketeering activity within the meaning of the RICO Statute ("Racketeering Acts").  Defendants'

---

[41] *Id.*

- 14 -

Racketeering Acts include indictable, predicate offenses under 18 U.S.C. §§1341 and 1343 based on Defendants' fraudulent use of interstate mail and wire communications, including posting the materially false and misleading Program Documents on the public website of Wells Fargo and distributing them to customers throughout the country.

47.     The Racketeering Acts are related in that they are taken in furtherance of Defendants' Sweep Program scheme.  The Racketeering Acts occurred, and continue to occur, regularly and continuously over a multi-year period during the operation of the Sweep Program.

48.     Defendants conduct the Racketeering Acts as part of a common conspiracy to violate 18 U.S.C. §1962(c) of the RICO Statute.  Defendants, with knowledge and intent, agreed to the overall objectives of the conspiracy and, through the Racketeering Acts, participate in a common course of conduct in furtherance of the Sweep Program scheme, including posting the materially false and misleading Program Documents on the public website of Wells Fargo and distributing them to customers throughout the country.

49.     As Sweep Program customers, Plaintiff and the Class are damaged by Defendants' Racketeering Acts due to Defendants' payment of unreasonably low interest rates on the money customers deposited into the Sweep Program.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of all persons who had cash deposits or balances in the Sweep Program ("Class").  Excluded from the Class are Defendants, officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

51.     The Class members are so numerous that their individual joinder is impracticable. While the exact number of Class members can only be determined by appropriate discovery, Plaintiff believes that Class members number in the thousands, and are geographically dispersed, because Wells Fargo's wealth management services oversee nearly $1.9 trillion in client assets through nearly 12,000 financial advisors across the United States.

52.     Plaintiff's claims are typical of Class members' claims because Plaintiff's cash deposits were subject to the Sweep Program, and therefore Plaintiff's claims, and those of all other Class members, arise from the same wrongful conduct by Defendants alleged herein.

53.     Plaintiff will fairly and adequately protect the interests of the Class members and has retained counsel experienced and competent in complex class actions litigation.  Plaintiff has no interests that are contrary to, or in conflict with, the members of the Class that Plaintiff seeks to represent.

54.     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class or a risk of adjudications that, as a practical matter, would be dispositive of the interests of other Class members who were not parties to the adjudications or would substantially impair or impede the ability of such Class members to protect their interests.

55.     Because Defendants act or refuse to act on grounds that apply generally to the Class, final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

56.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

57.     Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members in that Defendants act on grounds generally applicable to the entire Class.  Among the questions of law and fact common to the Class are:

(a)     whether Defendants violate the laws as alleged herein;

(b)     whether WFA owes fiduciary duties to members of the Class in connection with the Sweep Program;

(c)     whether WFA breaches its fiduciary duties to members of the Class in connection with the Sweep Program;

(d)     whether WFA breaches its contractual obligations to members of the Class in connection with the Sweep Program;

(e)     whether Defendants violate the Advisers Act;

(f)     whether Defendants violate the RICO Statute;

(g)     whether Defendants make material misrepresentations and/or omissions regarding the Sweep Program;

(h)     whether Defendants are unjustly enriched by their wrongful conduct;

(i)     whether the members of the Class sustain damages as a result of the alleged wrongful conduct by Defendants, and, if so, the appropriate measure of damages; and

(j)     whether the members of the Class are entitled to attorneys' fees and costs and, if so, the appropriate amount of attorneys' fees and costs.

## COUNT I

## BREACH OF FIDUCIARY DUTY AGAINST DEFENDANTS
## WELLS FARGO AND WFA

58.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

59.    WFA is the agent of, and investment advisor to, customers enrolled in the Sweep Program, including Plaintiff and the Class.  Wells Fargo owns and controls WFA.

60.    WFA owes fiduciary duties to Plaintiff and the Class, including a duty to act in the best interests of, and deal fairly and honestly with, Plaintiff and the Class.

61.    WFA violates its duty to act in the best interests of Plaintiff and the Class by using the Sweep Program to enrich itself at the expense of customers who are paid unreasonably low interest rates, as described above.

62.    WFA also violates its duty to deal fairly and honestly with Plaintiff and the Class by making material misrepresentations and omissions in the Program Documents, as described above.

63.    Further, WFA violates its duty to act with reasonable care to verify the truthfulness of the information set forth in the Sweep Program, which are materially misleading and omit material facts for the reasons described above.

64.    As a direct and proximate result of WFA's breach of its fiduciary duties, Plaintiff and the Class suffer damages and are entitled to recover such damages from Defendants.

## COUNT II

## VIOLATION OF THE INVESTMENT ADVISERS ACT OF 1940
## AGAINST DEFENDANTS WELLS FARGO AND
## WFA

65.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

66.    WFA is registered as an investment adviser under the Advisers Act.  Wells Fargo owns and controls WFA.

67.    WFA violates Section 206 of the Advisers Act by failing to serve the best interests of its clients, Plaintiff and the Class, and by placing its own interests ahead of the interests of Plaintiff and the Class in connection with the Sweep Program, as further alleged herein.  *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 C.F.R. §276 (July 12, 2019).

68.    The Client Agreement should be deemed void pursuant to Section 215 of the Advisers Act, which provides that every

> (b) . . . contract made in violation of any provision of this title and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this title, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision.

69.    Accordingly, Plaintiff seeks rescission of the Client Agreement and restitution of the consideration given pursuant to its purported terms.

**COUNT III**

**BREACH OF CONTRACT AGAINST DEFENDANTS
WELLS FARGO AND WFA**

70.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

71.     Plaintiff and Class members entered into the Client Agreement with WFA concerning the Sweep Program.  Wells Fargo owns and controls WFA.

72.     The Client Agreement incorporates the terms of the Bank Deposit Statement. Pursuant to the Bank Deposit Statement, WFA is contractually obligated to act as an agent on behalf of Plaintiff and the Class, and, thus, is contractually obligated to act in Plaintiff's and the Class' best interests in seeking and negotiating reasonable sweep interest rates under the Sweep Program.

73.     WFA breached its contractual obligations by failing to provide Plaintiff and the Class with fair and reasonable sweep interest rates on their cash sweep balances in the Sweep Program.  Rather, the sweep interest rates provided by WFA were below market and unreasonably low.  As such, WFA denied Plaintiff and the Class the full benefit of their bargain under the Client Agreement.

74.     As a direct and proximate result of WFA's breach of contract, Plaintiff and the Class sustained damages.

**COUNT IV**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
AGAINST DEFENDANTS WELLS FARGO AND
WFA**

75.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

76.     Plaintiff and Class members entered into the Client Agreement with WFA concerning the Sweep Program.  Wells Fargo owns and controls WFA.

77.     Implicit in the Client Agreement was a duty of good faith and fair dealing.

78.     WFA breached its duty of good faith and fair dealing by failing to provide Plaintiff and the Class with fair and reasonable sweep interest rates on their cash sweep balances in the Sweep Program.  Rather, the interest rates provided by Defendants were below market and unreasonably low.  As such, WFA denied Plaintiff and the Class the full benefit of their bargain under the Client Agreement.

79.     As a direct and proximate result of WFA's breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class sustained damages.

## COUNT V

**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1962(c)-(d), AGAINST ALL DEFENDANTS**

80.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

81.     This claim arises under 18 U.S.C. §1962(c)-(d) of the RICO Statute, which provide in relevant part:

(c)     It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

(d)     It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section.

82.     At all relevant times, Defendants were "person[s]" because they are capable of holding a legal or beneficial interest in property.

- 21 -

83.    WFA is an enterprise engaged in interstate commerce.  Through WFA, Defendants knowingly and intentionally devised and operated the Sweep Program as a scheme to defraud investors.  Defendants used the Sweep Program to enrich themselves by paying unreasonably low interest rates to Sweep Program customers.

84.    Defendants conducted and participated in multiple, related Racketeering Acts for the purpose of implementing the Sweep Program.  The Racketeering Acts, which occurred, and continue to occur, regularly and continuously during the operation of the Sweep Program over a multi-year period, constitute a "pattern of racketeering activity."  The Racketeering Acts are made possible by the regular, repeated, and continuous use of the employees, facilities, and services of WFA.

85.    Defendants' Racketeering Acts include the following indictable, predicate offenses:

(a)    **Mail Fraud**: Defendants violate 18 U.S.C. §1341 by sending and receiving materials via United States mail and commercial interstate carriers for the purpose of conducting the fraudulent Sweep Program scheme, including the Program Documents.  As described above, the Program Documents contain material misrepresentations and omissions knowingly and intentionally made by Defendants for the purpose of defrauding customers.

(b)    **Wire Fraud**: Defendants violate 18 U.S.C. §1343 by transmitting and receiving writings and sounds by means of interstate wire communication for the purpose of conducting the fraudulent Sweep Program scheme.  The writings include the Program Documents, which are posted on Wells Fargo's public website.  As described above, the Program Documents contain material misrepresentations and omissions knowingly and intentionally made by Defendants for the purpose of defrauding customers.

86.     Defendants conduct the Racketeering Acts as part of a common conspiracy to violate 18 U.S.C. §1962(c) of the RICO Statute.  Defendants, with knowledge and intent, agree to the overall objectives of the conspiracy and, through the Racketeering Acts, participate in a common course of conduct in furtherance of the Sweep Program scheme, including mailing and transmitting the Program Documents to customers.

87.     Plaintiff and the Class suffer damages by reason of Defendants' payment of unreasonably low interest rates on their Sweep Program deposits, in violation of 18 U.S.C. §1962(c)-(d).

88.     Plaintiff's and the Class's injuries are directly and proximately caused by Defendants' racketeering activity.

**COUNT VI**

**NEGLIGENCE AGAINST ALL DEFENDANTS**

89.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

90.     WFA is the agent of, and investment advisor to, customers enrolled in the Sweep Program, including Plaintiff and the Class.  Wells Fargo facilitates the Sweep Program by accepting payments from customers through its online investment platform, which are swept into the Sweep Program.  Wells Fargo owns and controls WFA.

91.     Defendants owe Plaintiff and the Class a duty to act with reasonable care in connection with their cash sweep balances deposited and maintained in the Sweep Program.

92.     Defendants' conduct with respect to the Sweep Program, as described above, is negligent.  By failing to provide Plaintiff and the Class with fair and reasonable sweep interest rates on their cash sweep balances in the Sweep Program, Defendants breach their duty to act with reasonable care.

- 23 -

93.    Defendants' negligence directly and proximately causes harm to Plaintiff and the Class.

## COUNT VII

### NEGLIGENT MISREPRESENTATIONS AND OMISSIONS
### AGAINST ALL DEFENDANTS

94.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

95.    WFA is the agent of, and investment advisor to, customers enrolled in the Sweep Program, including Plaintiff and the Class.

96.    Defendants owe Plaintiff and the Class a duty to act with reasonable care in connection with their cash sweep balances deposited and maintained in the Sweep Program.

97.    Defendants negligently make material misrepresentations and omissions in the Program Documents, as described above, which are posted on Wells Fargo's public website.

98.    Plaintiff and the proposed Class justifiably rely on Defendants' Program Documents and accordingly deposited and maintain cash balances in the Sweep Program to their detriment.

99.    Defendants' material misrepresentations and omissions directly and proximately caused harm to Plaintiff and the members of the proposed Class.

## COUNT VIII

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW §349
### AGAINST ALL DEFENDANTS

100.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

101.    Defendants selected New York law as the law governing the Client Agreement.

102.    Defendants' acts and practices with respect to the Sweep Program, as described above, constitute unlawful, unfair, misleading, and deceptive business acts and practices in violation of Section 349 of New York's General Business Law ("GBL").

103.    Defendants' misleading and deceptive business acts and practices with respect to the Sweep Program adversely impacted Plaintiff and the Class, and, therefore, constitute consumer-oriented conduct under GBL §349, which resulted in direct harm to Plaintiff and the Class.

104.    Accordingly, Plaintiff and the Class seek appropriate relief under GBL §349, including injunctive relief and damages.

## COUNT IX

### UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

105.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

106.    Defendants financially benefit from the unlawful acts alleged herein by paying Plaintiff and the Class unreasonably low and below market interest payments on their Sweep Program balances.  These unlawful acts cause Plaintiff and the Class to suffer injury and monetary loss.

107.    As a result of the unlawful acts alleged herein, Defendants have been, and continue to be, unjustly enriched at the expense of Plaintiff and the Class.

108.    Defendants have received, and are holding, funds belonging to Plaintiff and the Class, which in equity Defendants should not be permitted to keep but should be required to refund to Plaintiff and the Class.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for relief and

judgment, as follows:

A.      Declaring that this action is a proper class action and certifying Plaintiff as Class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel, Robbins Geller Rudman & Dowd LLP, as Class Counsel for the proposed Class;

B.      Awarding compensatory damages in favor of Plaintiff and the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding treble damages in favor of Plaintiff and the Class;

D.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees;

E.      Ordering rescission of the Client Agreement and restitution of all fees and other benefits received by Defendants thereunder; and

F.      Such other and further relief as the Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  November 22, 2024

ROBBINS GELLER RUDMAN
  & DOWD LLP
STEPHEN R. ASTLEY
ANDREW T. REES
RENE A. GONZALEZ
SCOTT I. DION

*s/ Stephen R. Astley*

STEPHEN R. ASTLEY

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
sastley@rgrdlaw.com
arees@rgrdlaw.com
rgonzalez@rgrdlaw.com
sdion@rgrdlaw.com

LAW OFFICE OF ALFRED G. YATES, JR., P.C.
ALFRED G. YATES, JR.
1575 McFarland Road, Suite 305
Pittsburgh, PA  15216
Telephone:  412/391-5164
yateslaw@aol.com

*Attorneys for Plaintiff*